**Affirmed and Memorandum Opinion filed April 28, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00366-CV

### PACIFIC WESTERN BANK, AS SUCCESSOR BY MERGER TO CAPITALSOURCE BANK, Appellant

**V.**

### BRAZORIA COUNTY, Appellee

**On Appeal from the 239th District Court
Brazoria County, Texas
Trial Court Cause No. 70781**

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, the appellant challenges the trial court's grant of a plea to the jurisdiction that dismissed one of appellant's defenses to the underlying tax delinquency suit. We conclude that the trial court does not have jurisdiction to consider the asserted defense, because appellant failed to exhaust its administrative remedies. Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

CapitalSource Bank ("CapitalSource"), which was the predecessor-in-interest to appellant Pacific Western Bank,[1] allegedly had a financial arrangement (the details of which are unclear) with Chiquita Brands L.L.C. ("Chiquita") pertaining to the purchase of refrigerated cargo containers. These containers allegedly are used by Chiquita in international trade, but at times a certain number of containers are temporarily located at a storage facility in Freeport, Brazoria County, Texas.

In April 2011, an agent acting on behalf of CapitalSource filed a business personal property rendition of taxable property with the Brazoria County Appraisal District ("the District") for the cargo containers. The rendition listed CapitalSource as the "Property owner/manager[]," and included a signed attestation that CapitalSource was the property owner or an affiliated entity of the property owner. CapitalSource, however, also added stamped notations reading "FOR INFORMATIONAL PURPOSES ONLY," and included notes reading "Tax Obligation of User, not Taxpayer – Personal Property" and "INFORMATIONAL FILING ONLY – Please Assess User Directly." The only reference made to Chiquita in the rendition was in an attached table that listed "Chiquita Brands, LLC" under a column titled "Site Name." In May 2011, the District issued to CapitalSource a notice of appraised value for the cargo containers, which listed an estimated tax of over $317,000. CapitalSource admittedly did not file a protest of the tax assessment with the District claiming that the cargo containers are exempt from taxation. *See* Tex. Tax Code Ann. §§ 41.41, 41.44 (West, Westlaw through 2013 3d Called Sess.).

---

[1] We will refer to CapitalSource Bank exclusively in this opinion.

2

In April 2012, CapitalSource again filed a business personal property rendition of taxable property with the District for the cargo containers. As with the 2011 rendition, the 2012 rendition listed CapitalSource as the "Property owner/manager[]," and included a signed attestation that CapitalSource was the property owner or an affiliated entity of the property owner. CapitalSource also affirmed that "the information contained in the most recent rendition statement filed by the property owner in a prior year is accurate with respect to the current tax year." But, CapitalSource also included on the 2012 rendition various handwritten and stamped notations reading "BILL TO LESSEE," "FOR INFOMATIONAL PURPOSES ONLY," "Tax Obligation of User, Not Taxpayer – Personal Property," "INFORMATIONAL FILING ONLY – Please Assess User Directly," "Capital Source Bank – For Chiquita Brands LLC Please Assess User Directly," and "PER HUGH LANDRY FILE INFORMATIONAL."

In May 2012, the District issued to CapitalSource a notice of appraised value for the cargo containers, which listed an estimated tax of over $349,000. In June 2012, CapitalSource filed a formal administrative protest of the tax assessment. The only reason for the protest disclosed on the notice stated, "VALUE INCREASED FROM PRIOR YEAR – NO EXPLANATION." The District's appraisal review board sent CapitalSource notice that the protest hearing was scheduled for July 11, 2012 at 1:00 PM. CapitalSource, however, did not appear for the protest hearing, and it admits it did not pursue that protest. Also, CapitalSource admittedly did not file a protest of the tax assessment with the District claiming that the cargo containers are exempt from taxation.

In December 2012, appellee Brazoria County filed a delinquent tax suit against CapitalSource alleging that the assessed taxes on the cargo containers, along with penalties and interest, had not been paid. CapitalSource subsequently

filed a third-party petition against Chiquita. In December 2013, CapitalSource and Chiquita jointly filed a motion for summary judgment, in which they argued that the ad valorem taxes assessed against the containers are unconstitutional under federal law, and, therefore, unenforceable, because the containers are instrumentalities used exclusively in international commerce. In response, Brazoria County filed a plea to the jurisdiction, motion to dismiss, and response to the motion for summary judgment, in which Brazoria County argued, among other matters, that the trial court lacks jurisdiction to hear the constitutional claim because neither CapitalSource nor Chiquita exhausted its administrative remedies by filing a protest of the tax assessment as required by the Tax Code. *See* Tex. Tax Code Ann. § 42.09 (West, Westlaw through 2013 3d Called Sess.). CapitalSource and Chiquita filed a response to Brazoria County's plea.

After a hearing, the trial court signed an order on April 24, 2014, granting Brazoria County's plea to the jurisdiction, and dismissing the constitutional defense asserted by CapitalSource and Chiquita in their respective answers. CapitalSource then filed this interlocutory appeal of the trial court's order.[2] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West, Westlaw through 2013 3d Called Sess.).

## ANALYSIS

In its sole issue, CapitalSource argues that the trial court's grant of Brazoria County's plea to the jurisdiction was in error, because CapitalSource's failure to file a formal administrative protest of the ad valorem tax assessment against the cargo containers does not preclude it from asserting in the underlying litigation that the taxes are unconstitutional and, thereby, unenforceable. "We review de novo a trial court's ruling on a plea to the jurisdiction." *Allstate Indem. Co. v. Mem'l*

---

[2] Chiquita did not appeal the trial court's order.

4

*Hermann Health Sys.*, 437 S.W.3d 570, 573 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

### Challenges to a Property Tax Assessment Generally Must Be Made Through an Administrative Protest Process and Corresponding Judicial Review.

"The Texas Tax Code provides detailed administrative procedures for those who would contest their property taxes." *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006) (per curiam). Under the Tax Code, a property owner is entitled to protest various actions before the respective appraisal review board, such as "inclusion of the owner's property on the appraisal records," "denial to the property owner in whole or in part of a partial exemption," and "any other action . . . that applies to and adversely affects the property owner." Tex. Tax Code Ann. § 41.41(a)(3), (a)(4), (a)(9) (West, Westlaw through 2013 3d Called Sess.). "The intent of the administrative review process is to resolve the majority of tax protests at this level, thereby relieving the burden on the court system." *Webb Cnty. Appraisal Dist. v. New Laredo Hotel, Inc.*, 792 S.W.2d 952, 954 (Tex. 1990). "If the property owner is dissatisfied by the determination of the appraisal review board following the protest hearing, the property owner is then entitled to judicial review under Chapter 42 of the Tax Code—a trial de novo in the district court further appealable as any civil case." *Appraisal Review Bd. of Harris Cnty. Appraisal Dist. v. Spencer Square Ltd.*, 252 S.W.3d 842, 845 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

As a corollary to the existence of the administrative protest process, including the availability of further judicial review, the Tax Code provides (with limited exceptions not applicable here) that the "procedures prescribed . . . for adjudication of the grounds of protest authorized by this title are exclusive, and a

property owner may not raise any of those grounds: (1) in defense to a suit to enforce collection of delinquent taxes." Tex. Tax Code Ann. § 42.09(a).[3] Therefore, "a taxpayer's failure to pursue an appraisal review board proceeding deprives the courts of jurisdiction to decide most matters relating to ad valorem taxes." *Matagorda Cnty. Appraisal Dist. v. Coastal Liquids Partners, L.P.*, 165 S.W.3d 329, 331 (Tex. 2005); *see also Patel v. Harris Cnty. Appraisal Dist.*, 434 S.W.3d 803, 812–13 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("[A] property owner's failure to protest a ground of protest before the appraisal review board deprives the district court of jurisdiction because the property owner has failed to exhaust administrative remedies as to that ground.").

### *CapitalSource's Constitutional Defense to the Delinquency Suit Seeks to Set Aside the Tax Assessments, Which is a Claim that Must Be Brought Administratively.*

CapitalSource acknowledges that it did not pursue a formal administrative protest of either the 2011 or 2012 tax assessments on the cargo containers based on CapitalSource's assertion that the containers are exempt from taxation as instrumentalities of international commerce. CapitalSource nonetheless argues that it may raise the alleged unconstitutionality of the tax assessments as a defense to Brazoria County's suit—notwithstanding Section 42.09(a) of the Tax Code—because the defense is a pure question of law. We disagree.

In *Rourk*, the supreme court reversed a court of appeals' decision that the requirement to exhaust administrative remedies was inapplicable because the taxpayers had raised purely legal and constitutional questions. The court reasoned: "The taxpayers here are seeking more than a declaration that taxing trailers is

---

[3] Exhaustion of administrative remedies is not required to assert an affirmative defense that the taxpayer either did not own the property or that the property was outside the boundaries of the taxing unit. *Rourk*, 194 S.W.3d at 502 n.2; Tex. Tax Code Ann. § 42.09(b) (West, Westlaw through 2013 3d Called Sess.).

6

unconstitutional—they are seeking to have their individual assessments set aside. While the former claim need not be brought administratively, the latter must." *Rourk*, 194 S.W.3d at 502. CapitalSource is likewise seeking to have the 2011 and 2012 tax assessments on the cargo containers set aside. Therefore, this is a claim that CapitalSource was required to bring administratively.

Our recent decision in *Harris County Appraisal District v. ETC Marketing, Ltd.*, 399 S.W.3d 364 (Tex. App.—Houston [14th Dist.] 2013, pet. denied), is particularly instructive. In that case, the taxpayer claimed that the property in question was exempt from taxation under federal law because it was in interstate commerce. The taxpayer failed to raise that claim in its administrative protest to the appraisal review board. Instead, the taxpayer raised the claim for the first time in the appeal to the district court of the review board's decision. *Id.* at 366. The taxpayer argued it was not required to exhaust its administrative remedies because the assessed tax was unconstitutional and the taxpayer was raising a pure question of law. *Id.* at 368. We rejected that argument, stating: "[The taxpayer] is not raising a pure question of law; it also is seeking to have its tax assessments set aside. It therefore is not relieved from the requirement of exhausting administrative remedies." *Id.* (citing *Rourk*, 194 S.W.3d at 502). Here, CapitalSource is making effectively the same argument that we rejected in *ETC Marketing*, except that it is trying to raise the claim even later in the process as a defense to a collection suit— which section 42.09(a) expressly says it cannot do.

### *CapitalSource's Attempts to Distinguish this Case Are Unpersuasive.*

CapitalSource makes several arguments why the holding in *Rourk* should not apply here, but we are not persuaded by these arguments. As one argument, CapitalSource places great emphasis on the fact that it marked its 2011 and 2012 renditions as being "for informational purposes only" and with similar such

statements. But CapitalSource does not provide us any authority to demonstrate that the handwritten and stamped markings on its filed renditions have any legal effect, nor are we aware of any such authority. Moreover, even were we to assume that the markings added by CapitalSource on its renditions provided some legally-effective instructions to the District, CapitalSource does not provide any authority to support its position that it was excused from having to file an administrative protest of the resulting tax assessments in order to raise its constitutional claim merely because CapitalSource included the "informational" markings on the renditions. Indeed, to the extent the various markings added by CapitalSource have any significance at all, it appears to be in connection with which entity—CapitalSource or Chiquita—should have been assessed the tax, which is distinct from the constitutional claim CapitalSource now makes that the containers should be exempt from tax.[4] *Cf. ETC Mktg.*, 399 S.W.3d at 369–70 (holding that filing a protest on other grounds did not exhaust administrative remedies with respect to constitutional claim).

CapitalSource also attempts to distinguish the holding in *Rourk* based on purported admissions by Brazoria County that the tax assessments were inappropriate because Brazoria County granted a full exemption for cargo containers in the 2013 tax year. As an initial matter, we do not read the record as containing an admission by Brazoria County that the 2011 and 2012 tax assessments for cargo containers were inappropriate. And, even were we to conclude that Brazoria County did make such an admission, CapitalSource provides no authority to support its argument that such an admission relieves it from having to exhaust its administrative remedies. If CapitalSource had a valid

---

[4] For example, on both the 2011 and 2012 renditions, CapitalSource included the notation "Please Assess User Directly." This statement does not challenge the validity of any assessment, but rather concerns the obligee on the assessment.

8

argument that cargo containers were exempt from taxation under federal law in 2011 and 2012, it could have—and should have—raised that argument through an administrative protest. *See* Tex. Tax Code Ann. § 11.12 (West, Westlaw through 2013 3d Called Sess.) ("Property exempt from ad valorem taxation by federal law is exempt from taxation."); *ETC Mktg.*, 399 S.W.3d at 366 ("[A] taxpayer desiring to have its property removed from the tax rolls on the ground that the property is in interstate commerce and therefore exempt from taxation must exhaust administrative remedies by raising that argument with the appraisal review board in a timely tax protest under Chapter 41 of the Texas Tax Code.").

CapitalSource further refers to "informal dialogue" that it claims it engaged in with the District following the issuance of the 2011 notice of appraised value, although CapitalSource fully acknowledges that it did not pursue any formal administrative protest of either the 2011 or 2012 tax assessment based on the asserted unconstitutionality of the assessments. In its opening brief, CapitalSource suggests such informal dialogue has some bearing on why it is excused from having to file a formal administrative protest, but CapitalSource does not explain that suggestion or provide any authority in support. In its reply brief, CapitalSource suggests that the alleged informal dialogue "may lead to the determination that an informal protest was triggered sufficient to satisfy the Tax Code and preserve the issue for judicial determination."

CapitalSource's claim of ongoing "informal dialogue" with the District does not affect our conclusion. First of all, CapitalSource's suggestion in its reply brief that such informal dialogue may be a sufficient protest under the Tax Code was not made in CapitalSource's opening brief, and therefore is waived. *See Zurita v. Lombana*, 322 S.W.3d 463, 477 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Next, there is insufficient evidence in the record to demonstrate whether,

9

and to what extent, the claimed informal dialogue actually occurred, which CapitalSource effectively concedes by its statements that discovery is still being sought on this topic. Also, CapitalSource fails to provide any authority to support its position that engaging in informal dialogue enables it to challenge the constitutionality of the tax assessment in a delinquency suit in district court when the Tax Code mandates the formal administrative protest procedure as the exclusive initial route. *See* Tex. Tax Code Ann. §§ 41.44(a) ("[T]o be entitled to a hearing and determination of a protest, the property owner initiating the protest must file a written notice of the protest with the appraisal review board . . . ."), 42.09(a) (West, Westlaw through 2013 3d Called Sess.) (providing that the "procedures prescribed by this title for adjudication of the grounds of protest authorized by this title are exclusive"); *Rourk*, 194 S.W.3d at 502 ("The administrative procedures are 'exclusive' and most defenses are barred if not raised therein.") (quoting section 42.09).

***CapitalSource Failed to Obtain a Determination that the Assessed Tax on the Cargo Containers is Unconstitutional Through the Exclusive Procedure for Doing So.***

CapitalSource further argues that the existence of an administrative procedure to challenge the constitutionality of a tax does not mean that an unconstitutional tax is enforceable. This argument presupposes that the 2011 and 2012 tax assessments are unconstitutional—a fact that has neither been adjudicated nor stipulated. As previously noted, the Tax Code provides an exemption for property exempted from taxation under federal law. *See* Tex. Tax Code Ann. § 11.12 (West, Westlaw through 2013 3d Called Sess.). But the Tax Code also specifies exclusive procedures that CapitalSource was required to follow after receiving the notices of appraised value in order to assert its claim to a constitutionally-based exemption. *See* Tex. Tax Code Ann. § 42.09(a)(1); *Rourk*,

10

194 S.W.3d at 502; *ETC Mktg.*, 399 S.W.3d at 366, 368. CapitalSource appears to be arguing that requiring adherence to the mandatory procedures of the Tax Code is impermissible, because doing so may result in Brazoria County collecting a tax on property that otherwise may have been determined to be exempt from taxation under federal law. To the extent CapitalSource is making such an argument, that argument cannot be reconciled with *Rourk* or *ETC Marketing*.

## CONCLUSION

CapitalSource failed to avail itself of the exclusive procedures established by the Tax Code to claim that the 2011 and 2012 tax assessments on the cargo containers should be set aside because the containers are exempt from taxation as instrumentalities of international commerce. As a consequence, the district court does not have jurisdiction to consider CapitalSource's constitutional defense in the underlying tax delinquency suit. Therefore, the trial court was correct to have granted Brazoria County's plea to the jurisdiction with respect CapitalSource's assertion that the cargo containers are exempt from taxation under federal law.

Accordingly, we overrule appellant's sole issue presented, and affirm the judgment of the trial court.

/s/    Marc W. Brown
       Justice

Panel consists of Justices Jamison, Busby, and Brown.

11